IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEFFREY L. WIESE,              )<br>                                )<br>          Plaintiff,            )<br>                                )<br>vs.                             )<br>                                )<br>JOHN HJERSMAN, individually and )<br>as parent and legal guardian of Marcus )<br>Hjersman, and                   )<br>MARCUS HJERSMAN, a minor,       )<br>                                )<br>          Defendants,           )<br>                                )<br>ALLIANCE MOTOCROSS ASSOCIATION,)<br>INCORPORATED,                   )<br>                                )<br>          Defendant and         )<br>          Third-Party Plaintiff, )<br>                                )<br>vs.                             )<br>                                )<br>TERRY GRUBBS,                   )<br>                                )<br>          Third-Party Defendant. )  | 4:04CV3195<br><br>ORDER |

This matter is before the court on two motions for summary judgment. The defendant, John Hjersman (Hjersman), filed a motion for summary judgment against the plaintiff, Jeffrey Wiese (Wiese) (Filing No. 63). The Alliance Motocross Association (the Association) filed a separate motion for summary judgment against defendant Hjersman and third-party defendant Terry Grubbs (Grubbs) (Filing No. 60). Both motions are fully briefed. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens from different states and the amount in controversy exceeds $75,000.[1] Additionally, the court has supplemental jurisdiction over third-party defendant Terry Grubbs under 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 636 and the consent of the

---

[1] The plaintiff, Wiese, is a resident of Arkansas, and the defendants Hjersman and Marcus Hjersman are residents of Nebraska and the Association is incorporated in Nebraska with its principal place of business also in Nebraska. **See** Filing No. 1.

parties, the undersigned magistrate judge is specially designated to exercise jurisdiction over this matter.  **See** Filing No. 101.

## BACKGROUND

On May 27, 2000, Wiese was struck by a motocross bike driven by Marcus Hjersman while at the Association's motocross track (the track).  **See** Filing No. 1, ¶ 5 (Complaint).  Wiese was walking alongside the driveway when Marcus Hjersman drove the motocross bike into the pedestrian and street traffic area.  *Id.*  On May 18, 2004, Wiese filed a personal injury action against the Association, Marcus Hjersman, a minor, and Marcus Hjersman's father, Hjersman, alleging their negligence caused the collision.  **See** *id.* at ¶ ¶ 5, 7, and 8.  Wiese specifically alleges the Association was negligent for entrusting use of the track to Marcus Hjersman, failing to provide or enforce regulations, and negligent in the supervision of minors.  *Id.* at ¶ 8.

On July 12, 2004, the Association filed a third-party complaint against Grubbs.  **See** Filing No. 16 (Third-Party Complaint).  The Association claims Grubbs permitted Wiese, a nonmember, to gain unlawful and unauthorized access to the Association's restricted premises and Grubbs was negligent in supervising Wiese at the track.  *Id.* at ¶ ¶ 5, 6.  The Association further states Wiese is the uncle of Grubbs' son, was a guest in Grubbs' home the weekend of May 27, 2000, and that Grubbs was aware Wiese intended to go to the track.  **See** Filing No. 62 (Association's Brief) p. 2-3.

On December 14, 2005, Hjersman filed a motion for summary judgment against Wiese.  **See** Filing No. 63.  Hjersman asserts Wiese's allegations of negligence are founded on the family purpose doctrine, but that the doctrine is inapplicable because Hjersman was neither the head of Marcus Hjersman's household, nor was the motocross bike being used for "family purposes."  **See** Filing No. 65 (Hjersman's Brief) p. 2-3.  Wiese counters that a genuine issue of material fact exists as to Hjersman's liability under the doctrine.  **See** Filing No. 69 (Wiese's Brief).  Specifically, Wiese argues he is entitled to have the trier of fact determine whether Hjersman is the head of Marcus Hjersman's family and whether the doctrine encompasses a motocross bike as a "family use" vehicle.  *Id.* at p. 9.

Also on December 14, 2005, the Association filed a motion for summary judgment against Hjersman and Grubbs. **See** Filing No. 60. The Association claims both Hjersman and Grubbs agreed in unambiguous terms to hold harmless and indemnify the Association from any and all liabilities when they signed an Application for Membership and Release of Liability (the Agreement). **See** Filing No. 62 (Association's Brief) p. 3. The Association contends the Agreement is not ambiguous, and therefore its terms are not subject to interpretation or construction. *Id*. at p. 4.

In contrast, Grubbs and Hjersman urge the court to deem the Agreement ambiguous. Hjersman asserts the Agreement is unenforceable due to vagueness and over breadth. **See** Filing No. 74 (Hjersman's Brief). Grubbs denies the Association's interpretation of the scope of the Agreement. **See** Filing No. 71 (Grubbs' Brief) p. 3. Grubbs argues the terms of the Agreement require indemnification only as to actions at "sanctioned events" at the track. *Id.* p. 9-10. On May 27, 2000, Grubbs was at the track watching his son practice. This practice, Grubbs argues, was not a "sanctioned event" and therefore beyond the scope of the indemnification Agreement.

The court will evaluate the merits of each motion for summary judgment below. However, as an initial matter, the court is also confronted with the Association's Motion for Reconsideration. **See** Filing No. 92. On March 20, 2006, Grubbs filed a Motion to Submit Additional Evidence. **See** Filing No. 78. Chief Judge Bataillon granted the motion on March 28, 2006. **See** Filing No. 88. On March 30, 2006, the Association filed a motion for reconsideration of the March 28, 2006 decision. **See** Filing No. 92. The Association filed a brief (Filing No. 93) in support of its motion. Grubbs submitted a brief (Filing No. 95) in opposition to reconsideration. The Association argues Grubbs' motion was filed out of time and will cause unnecessary and undue delay, cost, and briefing. However, Grubbs sought only to supplement the evidence with citations to previously known facts, some already in evidence. Additionally, no additional delay or briefing resulted. The Association's Motion for Reconsideration will be denied, in accordance with NECivR 60.1.

## UNCONTROVERTED FACTS

Hjersman is the father of Marcus Hjersman.  **See** Filing No. 64, Exhibit 2 (Hjersman's Deposition) p. 4.  Hjersman and Marcus Hjersman's mother divorced in 1994.  *Id.* at pp.88-89.   Hjersman is the non-custodial parent of Marcus Hjersman, who resides with his mother.  *Id.* at p. 9.  Hjersman purchased a motocross bike so Marcus Hjersman could learn how to ride at the track.  *Id.* at p. 17.  Hjersman also purchased a family membership at the track and Marcus Hjersman was included under the family membership.  *Id.* at p. 19.  Prior to May 26, 2000, and as a condition for membership, Hjersman signed a one-page form membership application.  **See** Filing No. 61, Exhibit 3 (Hjersman's Agreement).  Grubbs also signed a one-page form membership application, identical to that signed by Hjersman, on behalf of Grubbs' minor son.  **See** *id.*, Exhibit 2 (Grubbs' Agreement).  Each Application for Membership contained an identical indemnification agreement as follows:

> I for myself, my heirs, personal representatives and assigns, hereby release, discharge and agree to hold harmless and indemnify The Alliance Motocross Association, and/or the promoters presenting sanctioned events, the owners and lessees of premises on which sanctioned events take place, the owners, sponsors, and manufacturers of all racing equipment upon the premises, and the officers, all of them, of and from all liability, loss claims demand [sic] and possible causes of action that may otherwise accrue from any related to: sanctioned event and whether arising while engaged in competition or departing from said premises from any cause whatsoever [sic] including without limitation the failure of any one [sic] to enforce rules and regulations [sic] failure to make inspections, or the negligence of other persons.  I know the risk and danger to myself and property while upon the said premises or while participating or assisting in a sanctioned event, and I do so voluntarily and in reliance, not upon the property, equipment, facilities and existing conditions furnished by others, but upon my own judgment and ability, and I thereby assume all risk for less [sic], damage or injury (including death) to my self [sic] and my property form [sic] any cause whatsoever and whether or not attributable to the negligence of others.

**See** Filing No. 61, Exhibits 2 and 3.

On May 27, 2000, Hjersman and nine-year-old Marcus Hjersman were riding motocross bikes at the track.  **See** Filing No. 64, Exhibit 2 at p. 17.  Hjersman owned the bike Marcus Hjersman was riding.  *Id*.  Grubbs was at the track to watch his minor son practice riding a motocross bike.  **See** Filing No. 72, Exhibit A at p. 39.  While at the track, Wiese was struck by a motocross bike driven by Marcus Hjersman.  **See** Filing No. 1 ¶ 5.

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  **See** Fed. R. Civ. P. 56(c); ***Nat'l Am. Ins. Co. v. W & G, Inc.***, 439 F.3d 943, 945 (8th Cir. 2006).  When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial."  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986).  A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  ***Chambers v. Metro. Prop. & Cas. Ins. Co.***, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** *Anderson*, 477 U.S. at 248).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way allows it to accomplish this purpose."  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**See** Fed. R. Civ. P. 56(e). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." **Celotex**, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)). The court considers only admissible evidence and disregards portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact. **Murphy v. Missouri Dep't of Corr.**, 372 F.3d 979, 982 (8th Cir. 2004). Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); **Rodgers v. City of Des Moines**, 435 F.3d 904, 908 (8th Cir. 2006). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); **Janis v. Biesheuvel**, 428 F.3d 795, 799 (8th Cir. 2005). A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." **Anderson**, 477 U.S. at 248. Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the

movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1).

## ANALYSIS

### A. Family Purpose Doctrine

Hjersman filed a motion for summary judgment (Filing No. 63), a brief in support of his motion (Filing No. 65) and an index of evidence (Filing No. 64). Hjersman argues he is entitled to summary judgment because, to the extent Wiese's complaint is founded on the family purpose doctrine, Hjersman is not liable under the doctrine and is therefore entitled to judgment as a matter of law. Hjersman contends he was neither the head of Marcus Hjersman's household at the time of the subject accident, nor was the motocross bike used for "family purposes" as required under the doctrine. In contrast, Wiese argues there is a genuine issue of material fact as to the applicability of the family purpose doctrine. Wiese filed a brief (Filing No. 69) in opposition to Hjersman's motion.

Hjersman's motion addresses Wiese's complaint to the extent the complaint sounds in the family purpose doctrine.[2] Under the family purpose doctrine, a head of a household who furnishes a vehicle for family use may be liable for the conduct of other family members using the vehicle. ***Marcus v. Everett***, 239 N.W.2d 487, 491 (Neb. 1976). The party invoking the family purpose doctrine must prove:

> [T]he person sought to be charged with liability was the head of his or her family, that he or she furnished the car for the use and pleasure of the family, that the driver of the vehicle was a member of that family, and that the driver was, at the time of the accident, using the car for the purpose for which it was furnished and with the authority, expressed or implied, of the head of the family.

---

[2] The relevant portion of the Complaint states as follows:
   Defendant John Hjersman owned the motocross bike that Marcus Hjersman was driving. John Hjersman, the father of Marcus Hjersman, maintained the bike for family purposes and had so negligently entrusted the bike to his minor child on the date and at the time of the accident complained of by the Plaintiff.

**See** Filing No. 1, ¶ 7.

*Leonard v. Wilson*, 468 N.W.2d 604, 606 (Neb. 1991) (**citing** *Marcus*, 239 N.W.2d at 487).  Hjersman does not dispute that Marcus Hjersman was using the motocross bike for its intended purpose and with Hjersman's express permission.  Instead, Hjersman argues he was not the head of the household and the motocross bike was not being used for "family purposes" in order to make him liable under the family purpose doctrine.  **See** Filing No. 65 p. 2-3.

### 1. Head of Household

Establishing the defendant as the head of household under the family purpose doctrine is an element indispensable to recovery under the doctrine.  **See** *Ramsey v. Rimpley*, 244 N.W.2d 79 (Neb. 1976).  Hjersman first contends no rational jury could find he was the head of Marcus Hjersman's household at the time of the subject accident.  **See** Filing No. 65, p. 2.  Hjersman and Marcus Hjersman's mother divorced in 1994.  Marcus Hjersman lived with his mother after the divorce.  Hjersman argues he was not the head of Marcus Hjersman's household because he was the non-custodial parent at the time of the subject accident.  **See** *id.*  Wiese urges the court to consider a broader interpretation of "head of household" to include modern family units.  **See** Filing No. 69, p. 5-6.  Wiese argues children of divorced parents could theoretically have two "heads of household." *Id.* Additionally, Wiese highlights the undisputed fact that Hjersman purchased a "family membership" at the track, intending to ride with Marcus Hjersman.  *Id.* at p. 6.

For purposes of summary judgment, the court need only determine if a genuine issue of material fact exists as to whether Hjersman was the head of household, and need not determine if Hjersman was actually the head of household.  The court determines such a genuine issue of material fact exists.  The family purpose doctrine does not require the head of household to be the custodial parent, merely the financially responsible parent.

The court's finding is consistent with the public policy behind the family purpose doctrine, as discussed in *Marcus*.

> The dangers of the public from incompetent and financially irresponsible drivers is a menace of such gravity that every precaution is necessary to reduce such perils to the minimum. When a parent provides an automobile for the pleasure and

8

> convenience of his family, it is not too much to demand that he insure society against its negligent use for such purposes. He may avail himself of the protection of insurance against such hazards, but he should not be permitted to throw the risk upon the innocent victims of his family's negligence in such an agency as an automobile with which he has provided them.

*Marcus*, 239 N.W.2d at 492 (**quoting** 1 Harper & James, *The Law of Torts*, § 8.13, p. 661). By imputing liability to the head of the household, the family purpose doctrine prevents injured plaintiffs from judgment-proof infants. Although divorced from Marcus Hjersman's mother, Hjersman is not automatically relieved of financial responsibility. Marcus Hjersman is a minor, and, as a matter of law, "a father is primarily liable for support of his minor children, his liability being independent of the assets of the mother." **See** *Schneider v. Schneider*, 195 N.W.2d 227, 229 (Neb. 1972).

Additionally, the *Marcus* court goes on to hold: "Although not always necessarily true as a matter of fact, this court has specifically held that the father is the head of the household as a matter of law." **See** *id.* (**citing** *Demont v. Mattson*, 196 N.W.2d 190 (Neb. 1972) (holding as a matter of law that father was the head of the household where son was a student living in the home)). In determining the existence of the family relationship, a trier of fact may consider the following: (1) social status, rather than mere contract; (2) legal or moral obligation on the head to support the other members; and (3) corresponding state of dependence on the part of other members for their support. **See** *Hogg v. MacDonald*, 257 N.W. 274, 276 (Neb. 1934) (**quoting** *Roco v. Green*, 50 Tex. 483 (1878)); **see also** *Piechota v. Rapp*, 27 N.W.2d 682, 686 (Neb. 1947) (holding adult son was a visitor, rather than dependent under the doctrine). Under this analysis Hjersman has failed to establish why, as a matter of law, he is not the head of Marcus Hjersman's household under the present facts. The court finds a material fact exists with regard to the application of the family purpose doctrine. Weise is entitled to have the trier of fact determine whether Hjersman was the head of Marcus Hjersman's household as defined under the family purpose doctrine.

### 2. Family Use Vehicle

Hjersman next contends no rational jury could find the motocross bike was intended for "family use" as provided under the doctrine. **See** Filing No. 65. Hjersman argues the bike was furnished for Marcus Hjersman's exclusive use and not "family use." **See** *id.* In opposition, Wiese contends the doctrine does not recognize a legal distinction between an individual's exclusive use and "family use." **See** Filing No. 69.

The court finds merit in Wiese's argument. A genuine issue of material fact exists as to the "family use" of the motocross bike. Although Hjersman may have intended the bike to be used for Marcus Hjersman's exclusive use and pleasure, even such exclusive use may be considered "family use" for purposes of the doctrine. **Linch v. Dobson**, 188 N.W. 227, 229 (Neb. 1922). The **Linch** court determined there is "no reason for a distinction, whether the car is being used for the pleasure of two or more members of the family, or is being used by a single member of the family for his individual pleasure alone." *Id.*

In sum, the court finds a rational jury could find Hjersman was the head of Marcus Hjersman's household at the time of the subject accident and that the motocross bike was used for "family purposes." Accordingly, Hjersman's Motion for Summary Judgment is denied.

### B. Contract Interpretation

The Association, in its separate motion for summary judgment (Filing No. 60), argues Hjersman and Grubbs agreed, in unambiguous terms, to indemnify the Association against any and all claims concerning the Association, including the conduct of another person at the track. The Association filed a brief (Filing No. 62) and an index of evidence (Filing No. 61) in support of its motion. The Association contends it is entitled to summary judgment because Hjersman and Grubbs are contractually obligated to hold the Association harmless from any liability that may incur as a result of Wiese's action.

Grubbs and Hjersman dispute the Association's interpretation of the scope of the Agreement. Specifically, Grubbs and Hjersman argue the terms of the Agreement are ambiguous, which precludes the Association from obtaining summary judgment. Grubbs

filed a "resistance" (Filing No. 70), a brief (Filing No. 71), an index of evidence (Filing No. 72), and a supplemental index of evidence (Filing No. 94) in opposition to the motion. Hjersman also filed a brief (Filing No. 74) and an index of evidence (Filing No. 73) in opposition to the motion.

Nebraska contract law governs this diversity action. **See, e.g., *JN Exploration & Prod. v. W. Gas Res., Inc.***, 153 F.3d 906, 909 (8th Cir. 1998) (stating "it is axiomatic that federal courts apply state substantive law in diversity suits") (**citing *Erie R.R. Co. v. Tompkins***, 304 U.S. 64, 78 (1938)). When a federal district court exercises its diversity jurisdiction over claims brought under state law causes of action, it is bound by the state's law as determined by the highest court in that state. ***Foy v. Klapmeier***, 992 F.2d 774, 780 (8th Cir. 1993). "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." ***Comm'r v. Estate of Bosch***, 387 U.S. 456, 465 (1967); **see also *First Colony Life Ins. Co. v. Berube***, 130 F.3d 827, 829 (8th Cir. 1998) (stating a federal court exercising diversity jurisdiction "must predict how the state's highest court would decide the issue").

Under Nebraska law, the interpretation, construction, and effect of a contract are determined as a matter of law unless the contract is ambiguous. ***Guerrier v. Mid-Century Ins. Co.***, 663 N.W.2d 131, 135 (Neb. 2003). When interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. ***Daehnke v. Nebraska Dep't of Soc. Servs.***, 557 N.W.2d 17, 20 (Neb. 1996). In this case, the parties dispute whether the Agreement is ambiguous and they interpret it differently. **Compare** Filing No. 60 (Association's Brief) p. 3-8; **with** Filing No. 71 (Grubbs' Brief) p. 4-11; Filing No. 74 (Hjersman's Brief) p. 2-3. Therefore, the court will first determine whether the Agreement is ambiguous.

"The meaning of an unambiguous contract is a question of law. In contrast, the meaning of an ambiguous contract is generally a question of fact." ***Kropp v. Grand Island Pub. Sch. Dist. No. 2***, 517 N.W.2d 113, 116 (Neb. 1994). "[A] contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." ***Gary's Implement, Inc. v. Bridgeport***

11

***Tractor Parts, Inc.***, 702 N.W.2d 355, 366 (Neb. 2005) (**citing *Jensen v. Bd. of Regents***, 684 N.W.2d 537 (Neb. 2004)).  A court has a duty to "fastidiously guard against the invitation to create ambiguities where none exist."  ***Edgley v. Lappe***, 342 F.3d 884, 888 (8th Cir. 2003).

"A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." ***Murphy v. City of Lincoln***, 515 N.W.2d 413, 415-16 (Neb. 1994).  A court reads the contract terms according to their "plain and ordinary meaning as ordinary, average, or reasonable persons would understand them." ***Daehnke***, 557 N.W.2d at 21.  There is no need, in this case, to look beyond the plain language of the Agreement.

### 1.     Sanctioned Events

The Association argues the Agreement unambiguously indemnifies the Association against **any and all** liabilities concerning any conduct at the track.  In contrast, Grubbs and Hjersman argue the indemnification Agreement applies **only as to sanctioned events** at the track.  **See** Filing No. 71 (Grubbs' Brief).  The term "sanctioned event" is not expressly defined in the Agreement.  On May 27, 2000, Grubbs was at the track to watch his minor son practice riding a motocross bike.  Hjersman and Marcus Hjersman were also practicing riding motocross bikes at the track.  Grubbs and Hjersman argue these practices are not considered "sanctioned events," and therefore the Association should not be indemnified against Wiese's lawsuit.  Grubbs further argues neither he, Hjersman, nor the Association intended the Association to be indemnified for activities beyond sanctioned events.  **See** Filing No. 71, p. 5.  However, the court must use an objective basis in considering the term "sanctioned event," and does not weigh the subjective intentions of the parties.  **See *Estate of Stine***, 560 N.W.2d at 429.  Thus, Hjersman and Grubbs' intentions do not weigh on the court's determination of the Agreement.

Grubbs argues the motion should be denied because "in construing a contract, the court will apply the general rule that when there is a question as to the meaning of the language of a contract, the contract will be construed against the party preparing it." ***Artex, Inc. v. Omaha Edible Oils, Inc.***, 436 N.W.2d 146, 150 (Neb. 1989).  However, the court

need not define the term "sanctioned events," and the ***Artex*** rule therefore does not apply. The definition of "sanctioned events" has no bearing on the court's determination of the Agreement.

"A party may not pick and choose among the clauses of a contract, accepting only those that advantage it." ***Keenan Packaging Supply Co. v. McDermott***, 700 N.W.2d 645, 654 (Neb. 2005). Although Grubbs argues the Agreement only indemnifies the Association as to "sanctioned events," the terms of the Agreement do not provide such a limitation. Grubbs and Hjersman agreed in unambiguous terms to "release, discharge and agree to hold harmless and indemnify The Alliance Motocross Association **and/or** the promoters of sanctioned events . . . of and from all liability . . . that may otherwise accrue from any related to: sanctioned event . . . **or** the negligence of other persons." **See** Filing No. 61 Exhibits 2 and 3 (emphasis added). Thus, Grubbs and Hjersman agreed to indemnify the Association of and from all liability related to "sanctioned events" **or** the "negligence of other persons." The court need not determine what is or is not a "sanctioned event" because such events are not the exclusive circumstance in which they agreed to indemnify the Association.

Consistent herewith, additional language in the Agreement further supports the court's finding, such as: "I know the risk and danger to myself and property while upon the said premises **or** while participating or assisting in a sanctioned event." **See** Filing No. 61, Exhibits 2 and 3. Similarly, the Agreement contains the following terms: "I thereby assume all risk for less [sic], damage or injury (including death) to my self [sic] and my property form [sic] **any cause whatsoever and whether or not attributable to the negligence of others**." **See** *id.* (emphasis added). The Agreement distinguishes between "sanctioned events" and other events, but at all times covers both types of events. Reasonable minds cannot differ and no rational jury could find the Agreement indemnified the Association only as to "sanctioned events" at the track.

### 2.  Scope of Indemnification Agreement

The Association argues the scope of the Agreement unambiguously obligates Grubbs and Hjersman to indemnify the Association from any liability, including the Wiese's

lawsuit. The Association states Grubbs and Hjersman agreed to "indemnify The Alliance Motocross Association . . . of and from **all** liability, loss claims demand and possible causes of action . . . related to . . . **any cause whatsoever** . . . including the negligence of other persons." **See** Filing No. 61, Exhibits 2 and 3 (emphasis added). Grubbs argues the Agreement indemnifies the Association only as to claims by himself or on behalf of his son and not claims by a third party such as Wiese.[3]  **See** Filing No. 71 (Grubbs' Brief) p. 5. Specifically, Grubbs contends he intended only to indemnify the Association for acts or omissions committed by himself or his son. **See** *id.* Hjersman argues the terms of the Agreement are vague and overly broad, and the Agreement is therefore unenforceable. **See** Filing No. 74 (Hjersman's Brief) p. 2. Specifically, Hjersman and Grubbs contend that under the Association's interpretation of the Agreement, all members of the Association would be required to indemnify the Association in this action.

The court must use an objective basis to determine whether the scope of the Agreement is ambiguous. **See *Estate of Stine v. Chambanco, Inc.*** , 560 N.W.2d 424, 428 (Neb. 1997). The subjective intentions of the parties do not dictate the outcome of the court's determination and "the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous." ***Ruble v. Reich***, 611 N.W.2d 844, 849-50 (Neb. 2000). "Parties are bound by the terms of the contract even though their intent may be different from that expressed by the agreement." ***Bass v. Dalton***, 329 N.W.2d 115 (Neb. 1983). A court reads the contract terms according to their "plain and ordinary meaning as ordinary, average, or reasonable persons would understand them." ***Daehnke***, 557 N.W.2d at 21. "A contract must be construed as a whole, and if possible, effect must be given to every part thereof." ***Baker's Supermarkets, Inc. v. Feldman***, 502 N.W.2d 428, 433 (Neb. 1993) (**quoting** ***Crowley v. McCoy***, 449 N.W.2d 221, 224-25 (Neb. 1989)).

Grubbs and Hjersman agreed to ". . . hereby release, discharge, and agree to hold harmless and indemnify The Alliance Motocross Association . . . of and from all liability, loss claims demand and possible causes of action that may otherwise accrue from any related

---

[3] A "third party" in this context refers to someone who has not signed the Agreement.

to: sanctioned event . . . or the negligence of other persons." **Id.** The court finds the terms of the Agreement are unambiguous as to the scope of indemnification.

The term indemnify is not defined in the Agreement. However, the meaning of the term indemnity is:

> Reimbursement. An undertaking whereby one agrees to indemnify another upon the occurrence of an anticipated loss. A contractual or equitable right under which the entire loss is shifted from a tortfeasor who is only technically or passively at fault to another who is primarily or actively responsible.

Black's Law Dictionary 529 (abridged 6th ed. 1991); **see also *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.***, 443 N.W.2d 872, 876-877 (Neb. 1989). "More clearly stated, one whose negligence has consisted of mere passive neglect may have indemnity from an active wrongdoer[, if otherwise entitled]." ***Hiway 20 Terminal***, 443 N.W.2d at 876. Accordingly, while the Agreement language is unambiguous, it cannot be read, or applied, as broadly as the Association asks. The terminology used in the Agreement is limited to the loss anticipated by the parties and to shifting of such loss to another who is primarily or actively responsible. A determination of who is primarily or actively responsible has not yet been made in this case. Accordingly, summary judgment is not appropriate.

The scope of the indemnification clause is consistent with Nebraska law and public policy. Specifically, under Nebraska law, "[a]n indemnitee may be indemnified against his own negligence if the contract contains express language to that effect or contains clear and unequivocal language that that is the intention of the parties." ***Oddo v. Speedway Scaffold Co.***, 443 N.W.2d 596, 602 (Neb. 1989) (quotation omitted). For example, in ***Oddo***, the indemnity clause did not use the word "negligence" but clearly provided indemnity for the indemnittee's own conduct by stating "by the liability or conduct . . . of the lessor." The issue before the court is analogous to the issue in ***Oddo*** because the Association seeks indemnity for the negligent conduct of others by persons who may or may not be negligent themselves.

In this case, the Agreement includes indemnity for the negligence of other persons, however the phrase must be read in context with the remainder of the agreement. The Agreement is titled a "Release of Liability" and refers to an assumption of risk for loss or

damage "to my self and my property."  Further, the purpose of the agreement is to protect the Association from lawsuits initiated by the signatory-member.  The Agreement does not contain clear and unequivocal language making each signatory-member liable for any and all damages on the premises caused by or to others, that is each member of the Association would not be liable to the Association for damages in this case.  Granting summary judgment to the Association and holding that any association member could be liable for indemnity would be contrary to public policy.  Therefore to the extent the Agreement could be interpreted to hold all association members liable for indemnity, the Agreement is void.  **See *Custer Public Power Dist. v. Loup River Public Power Dist.***, 75 N.W.2d 619, 628 (Neb. 1956) ("Contracts contrary to public policy, that is those which tend to be injurious to the public or against the public good, are illegal and void."); **see also *New Light Co., Inc. v. Wells Fargo Alarm Servs., Div. of Baker Protective Servs., Inc.***, 525 N.W.2d 25, 31 (Neb. 1994) (public policy prohibits an exculpatory clause which includes gross negligence and willful and wanton misconduct).

In sum, the court finds the Agreement is not ambiguous.  While, the terms of the Agreement do not limit indemnification only to "sanctioned events," the terms of the agreement do not require indemnification from all signatory-members regardless of fault.  Because there has not yet been a determination in this case regarding liability, summary judgment is not appropriate.  Accordingly, the Association's Motion for Summary Judgment is denied.

**IT IS ORDERED**:

1. Hjersman's Motion for Summary Judgment (Filing No. 63) is denied.
2. Alliance Motocross Association's Motion for Summary Judgment (Filing No. 60) is denied.
3. Alliance Motocross Association's Motion for Reconsideration (Filing No. 92) is denied.

DATED this 5th day of September, 2006.

BY THE COURT:

 s/Thomas D. Thalken
 United States Magistrate Judge